THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
EDWIN WILLIE, Defendant-Appellee.

First District (5th Division)    No. 78-362

Opinion filed March 9, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

Jerome Feldman and Judith A. Halprin, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

The sole issue presented by the State in this appeal is whether the trial

court erred in dismissing the indictment against defendant for attempt robbery.

The occurrence which took place at Bethany Methodist Hospital involved Mary Ann Goecke, a nurse. The only person to testify before the grand jury was police officer Phillip Delia, who did not observe the occurrence and testified only to what Goecke had told him. Neither Goecke nor Fred Luce, a security guard who had observed the occurrence, appeared before the grand jury. Delia's testimony, in pertinent part, was as follows:

"Q Mr. Delia, did you on the 31st of July, some time in the early morning hours, arrest a man now known as Edwin Willie?

A I did.

Q Where did you arrest him and under what circumstances?

A I arrested him in the area between Ashland and Paulina, 4900 block, after he was chased by a security guard. I joined in the chase after he attempted to rob a nurse.

Q He was apprehended, was he not?

A That's correct.

Q Did you have occasion to talk to the nurse, namely, Mary Ann Goecke?

A I did.

Q Did she give you an account of an incident that happened at the Emergency Room at the hospital she worked in?

A That's correct.

Q That's at 2500 North Paulina?

A That's correct.

Q Which hospital is that, Officer?

A Bethany Methodist.

Q What did she relate?

A He approached her at the door of the Emergency Room as she was entering work and Mr. Willie wouldn't allow her in the door. She said, "Excuse me," and he wouldn't allow her in. He said, "Give it to me," and grabbed her throat with his left hand and her purse with his right hand and tried to take the purse from her.

Q Anyway, he met her at the door, did he not, and demanded something from her; grabbed her throat and tried to take her purse?

A That's correct.

Q She fought him off?

A That's correct; attempted to fight him off.

Q Was the incident observed?

A Yes it was.

Q By whom?

A Fred Luce, Security Guard.

Q Did you arrive on the scene to assist the person, Mr. Luce?
A I did.

Q He tried to give chase and it was then you were attracted by the chase and made your efforts to apprehend?
A Yes."

Defendant moved to dismiss the indictment, asserting that his due process rights were violated when the prosecutor presented hearsay evidence but failed to demonstrate a compelling justification for its use and did not inform the grand jury of its hearsay nature or that direct testimony was available. The motion to dismiss was granted, and this appeal followed.

OPINION

Initially, we note that an indictment may be dismissed on the basis of the ten grounds delineated in section 114—1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—1(a)), and it was held in *People v. Lawson* (1977), 67 Ill. 2d 449, 455, 367 N.E.2d 1244, 1246, that a trial court also has the inherent authority to dismiss an indictment "where there has been a clear denial of due process." There is no contention by either party that any provision of section 114—1(a) is applicable, but defendant argues that he was denied due process by the prosecutor's presentation of Officer Delia's hearsay testimony without demonstrating a compelling justification for its use rather than that of Goecke's or Luce's, or informing the grand jury either of its hearsay nature or the availability of the direct testimony of Goecke.

An indictment based solely on hearsay testimony is constitutionally acceptable. (*Costello v. United States* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406; *People v. Jones* (1960), 19 Ill. 2d 37, 166 N.E.2d 1.) Defendant has not cited, nor have we found, any case in which, as he urges, this rule has been qualified for constitutional reasons by a requirement that the grand jury be advised either of the hearsay nature of testimony or of the availability of direct testimony. Furthermore, he has failed to show that he was prejudiced by the manner in which the evidence was presented. Neither does he argue that the grand jury would have been less likely to indict had the prosecutor given the proposed admonitions or that he was placed at a personal disadvantage in any respect by the failure to do so.

Defendant does, however, refer us to several cases in support of his contention that his due process rights were in fact violated. He first cites *Branzburg v. Hayes* (1972), 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646, and emphasizes the following quotation from the opinion:

"[A] grand jury investigation 'is not fully carried out until every

available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' " (408 U.S. 665, 701, 33 L. Ed. 2d 626, 651, 92 S. Ct. 2646, 2667, quoting *United States v. Stone* (2d Cir. 1970), 429 F.2d 138, 140.)

He then argues that "when a prosecutor does not give * * * compelling justification for this use of solely hearsay evidence, and when he does not expressly alert the grand jury to the hearsay nature of the evidence or to the existence of readily accessible direct testimony and to its subpoena power in procuring such, he obstructs the grand jury from 'running down every available clue.' " We do not believe, however, that *Branzburg* is supportive of defendant's position, as it did not, as defendant seems to suggest, hold that an accused's due process rights are violated if the grand jury returns an indictment without considering the testimony of every conceivable witness. Rather, it held that newspaper reporters who possess knowledge of criminal activity are not afforded immunity from grand jury subpoenas by virtue of the First Amendment, and the quotation to which defendant refers was merely an incidental comment the court made in the course of a rather lengthy discussion on the role of the grand jury. Furthermore, *Branzburg* concerned legal questions quite dissimilar from those before us now. First, its focus was on the rights of the reporter witness and is therefore of little guidance in the instant case where an accused's rights are at issue. Second, the court was concerned that critical information would be withheld from grand juries; whereas, in the case at bar, no contention is made that the testimony was insufficient to sustain an indictment. In sum, *Branzburg* concerns issues so unrelated to those with which we are now faced as to be of no appreciable value.

Our attention is next called to a series of cases of the Second Circuit Court of Appeals, which defendant offers in support of his argument that the trial court properly dismissed the indictment. In one of these, *United States v. Umans* (2d Cir. 1966), 368 F.2d 725, *cert. denied* (1967), 386 U.S. 940, 17 L. Ed. 2d 872, 87 S. Ct. 975, *cert. dismissed as improvidently granted* (1967), 389 U.S. 80, 19 L. Ed. 2d 255, 88 S. Ct. 253, defendant was indicted for certain income tax violations on the basis of the sole testimony of an internal revenue agent who summarized the contents of the affidavits of various witnesses. Conviction eventually resulted and, on appeal, defendant attacked the sufficiency of the testimony upon which the indictment was based. The court of appeals upheld the indictment, but noted:

"While we are not condemning the procedure used here before the grand jury, we think it not amiss for us to state that excessive use of hearsay in the presentation of government cases to grand juries tends to destroy the historical function of grand juries in assessing the likelihood of prosecutorial success and tends to

destroy the protection from unwarranted prosecutions that grand juries are supposed to afford the innocent. Hearsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify from personal knowledge." 368 F.2d 725, 730.

In the next of the cases cited by defendant, *United States v. Leibowitz* (2d Cir. 1969), 420 F.2d 39, defendant was indicted for a draft-related violation solely on the basis of hearsay testimony, even though direct evidence was available. His conviction resulted and, while the indictment was upheld on appeal, the court explained:

"Indictments obtained principally or wholly upon the basis of hearsay evidence, even though direct testimony was available, will not be dismissed unless it appears that dismissal is required to protect the integrity of the judicial process. If the grand jury is misled into thinking it is getting eye-witness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed * * *, dismissal may be considered." 420 F.2d 39, 42.

In the third of these cases, *United States v. Estepa* (2d Cir. 1972), 471 F.2d 1132, the court ordered an indictment dismissed on the basis of the admonitions set forth in *Umans* and *Leibowitz*. In *Estepa*, defendants were arrested after they sold amounts of heroin and cocaine to undercover police officer Guzman on three separate occasions. At the subsequent grand jury hearing, Guzman did not testify because he was in the field doing other work, although there was admittedly no reason why the presentation could not have been postponed for one or two days so that he might have appeared. The sole testimony before the grand jury was that of Officer Twohill, who possessed extremely limited personal knowledge of the incidents. As to the first sale, when Twohill testified that one of the defendants passed a package of heroin to Officer Guzman, the prosecutor interjected, "You didn't observe the actual pass, but you did observe the meeting, is that correct?" and Twohill responded, "I did." Regarding the second sale, Twohill again testified that one of the defendants passed another package to Guzman and that Guzman paid $120. The grand jury was not apprised of any limitations on Twohill's direct knowledge of this incident. Concerning the third transaction, Twohill testified at length about a rather involved tender of heroin and cocaine to Guzman and related the contents of a conversation between one defendant and Guzman although he admitted on cross-examination at trial that he did not recall being at the scene on that date. He also told the grand jury the details of an elaborate chase of defendants, even though he in fact did not participate in it. The hearsay nature of this testimony was not brought to the attention of the grand jury in any manner by either

Twohill or the prosecutor. The grand jury returned indictments for various drug offenses, and defendants were convicted. On appeal, the court ordered the indictments dismissed, stating:

"[W]e have insisted that, even though '[t]here is no affirmative duty to tell the grand jury *in haec verba* that it is listening to hearsay,' [citation] the grand jury must not be 'misled into thinking it is getting eye-witness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed . . ..' United States v. Leibowitz, 420 F.2d 39, 42 (2 Cir. 1969). That was what happened here." 471 F.2d 1132, 1136.

We do not believe, however, that the line of cases culminating in *Estepa* supports the dismissal of the indictment in the instant case. Initially, we note that the court there exercised its supervisory powers in dismissing the indictments and did not view the prosecutor's handling of the presentation as a due process violation (471 F.2d 1132, 1136) and that this is not grounds for dismissal under Illinois rules (*People v. Lawson*). Moreover, even if we were to view the *Estepa* rule as a valid ground for dismissal in Illinois, we find that it was not violated in the instant case as, from our examination of the record, the grand jury was not "misled into thinking it [was] getting eyewitness testimony" from Officer Delia. Unlike *Estepa*, where the witness' lack of direct knowledge, the prosecutor in the instant case asked Delia, "Did you have occasion to talk to * * * Mary Ann Goecke?" "Did she give you an account of [the] incident?" and "What did she relate?" Furthermore, while the witness in *Estepa* did not explain which incidents he actually observed, Delia—when asked who observed the incident—gave only the name of Luce (the security guard) and not his own. Delia also said he was attracted to the scene by Luce's chase of defendant which, of course, was after the occurrence. Finally, in contrast to *Estepa*, Delia's testimony was so brief that the grand jury would not have become so engrossed in the story as to lose track of the fact that he was actually relating Goecke's account.

██ In the light of the foregoing, we believe that *Estepa* and its predecessors do not support the trial court's order of dismissal and reject the contention that the grand jury in the case at bar was misled into believing that it was hearing eyewitness testimony.

Defendant next directs us to *People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 480, where, among other issues, the court considered the question of whether the presiding judge who had ordered the impanelling of a special grand jury could lawfully order the special prosecutor to subpoena certain witnesses to testify and hold the special prosecutor in contempt upon his failure to do so. As defendant points out, the court rejected the argument that the grand jury is "independent of the court, beyond judicial control," and noted that such a view

"[W]ould vest in the State's Attorney the nonreviewable discretion as to what evidence is to be presented to the grand jury. This in our opinion could lead to abuse of the process, purpose and function of the grand jury and is inconsistent with its historic place in our system of justice." (49 Ill. 2d 14, 31, 273 N.E.2d 380, 389.)

The court further stated:

"We hold, therefore, that there may be circumstances under which the circuit court will have jurisdiction to direct that witnesses be supoenaed to appear before a grand jury. The preservation of the historic independence of the grand jury, however, requires that such supervisory power be exercised only when a failure to do so will effect a deprivation of due process or result in a miscarriage of justice." (49 Ill. 2d 14, 31, 273 N.E.2d 380, 389.)

The *Sears* court ultimately concluded, however, that the particular circumstances of the case did not justify the judge's intervention.

Defendant argues that if the State is allowed to present hearsay before the grand jury without restriction, the prosecutor would possess the "sole non-reviewable discretion as to what evidence is to be presented to the grand jury," contrary to the concern expressed in *Sears*. Our holding in favor of the State in the instant case, however, will in no way prevent a defendant from seeking dismissal of an indictment which was based solely upon the testimony of a witness or witnesses disqualified to testify by law. (Ill. Rev. Stat. 1977, ch. 38, par. 114—1(a) (9); *People v. Hopkins* (1973), 53 Ill. 2d 452, 292 N.E.2d 418; *People v. Jones*) or if there has otherwise been a clear denial of due process (*People v. Lawson*). Thus, prosecutorial discretion as to the evidence to be presented to the grand jury is indeed reviewable if such presentation violates Illinois law.

Defendant also suggests that if the State's position is sustained, the grand jury would lose "whatever autonomy it now has, and would grant the prosecutor the power to proceed without due process of law." We disagree. Defendant's position, not the State's, urges increased intervention in the grand jury process and hence decreased autonomy by expanding the scope of the court's review of the evidence presented. Furthermore, as we noted above, there is no merit to the assertion that prosecutors would be free to proceed in disregard of due process.

■■ We conclude that the prosecutor's handling of the evidence presented to the grand jury in the instant case neither deprived defendant of his due process rights nor violated the disclosure requirements of the cases cited.

■ Defendant also argues that the indictment may nonetheless be dismissed even if we find no transgression of constitutional proportions. He points to the supervisory powers courts possess over grand juries and

again calls our attention to *People v. Sears*, with emphasis on the following quotation:

"All indictments or presentments of a grand jury become effective only when presented in court and a record is made of such action. A grand jury is not, therefore, and cannot become, an independent, self-functioning, uncontrollable agency. It is and remains a grand jury attending on the court, and does not, after it is organized, become an independent body, functioning at its uncontrolled will, or the will of the district attorney or special assistant. * * * It can therefore never become an immaterial matter to the court what may be done with its process or with its grand jury. * * * A supervisory duty not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice." (49 Ill. 2d 14, 28, 273 N.E.2d 380, 388, quoting *In re National Window Glass Workers* (N.D. Ohio 1922), 287 F. 219, 225.)

Defendant argues that by virtue of the supervisory power stated in *Sears*, the trial judge possessed the power to dismiss the indictment even if there was no due process infringement. We disagree. Initially, we note that none of the authority we have found or that defendant has cited indicates that defendant's interests, even those of less than constitutional importance, were violated. Secondly, *Sears* involved the court's supervisory power over grand juries during the time they are in session and did not deal with the question of the court's authority to dismiss an indictment. Lastly, the *Sears* court cautioned that this supervisory power should be exercised "only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice" (49 Ill. 2d 14, 31, 273 N.E.2d 380, 389) which, as discussed above, we have not found to be the case here. We therefore do not believe that the court's supervisory powers as discussed in *Sears* and other cases provide authority for the dismissal of the indictment in question here.

■ Defendant lastly maintains the rule of *People v. Lawson*, that indictments may be dismissed on nonstatutory grounds only if there has been a clear denial of due process, is not applicable to the instant case. He points out that in *Lawson*, reindictment of the defendant was legally impossible; whereas, in the case at bar, defendant may be reindicted and thus we should feel free to dismiss the indictment on less stringent grounds. We find this contention to be without merit also, as we see no indication in *Lawson* that a more flexible standard should be applied to dismissals wherein the defendant may be reindicted, and we reject the contention that the integrity of an indictment should in any respect turn on the prospects of reindictment.

For the reasons stated above, the order of the trial court dismissing

the indictment is reversed and this cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.