No. 2--05--0216

filed: 11/7/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04--CF--3227 |
| NIKKOLAS W. OLIVER, | ) ) | Honorable George Bridges, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Nikkolas W. Oliver, was indicted on two counts of unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(c)(2) (West 2004)) (counts I and III) and one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2004)) (count II). He moved to dismiss all three counts of the indictment, contending that the sole witness to testify before the grand juries presented false and misleading testimony. The trial court dismissed counts I and III. The State timely appeals (see Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(a), eff. February 1, 2005). We affirm.

On September 22, 2004, defendant was indicted for unlawful possession of a controlled substance with the intent to deliver (count I) and unlawful possession of a

controlled substance (count II). Before the grand jury, Officer Micah Cress testified as follows:

"Q. State your last name, spell your last name for the record?

A. Detective Micah Cress, C-r-e-s-s.

Q. You're employed by the North Chicago Police Department, is that correct?

A. That's correct.

Q. Directing your attention now to an incident that occurred on or about August 30, 2004, were you and other officers watching an apartment due to some prior drug activity that had been occurring there?

A. Yes, we were.

Q. Okay. And you observed the defendant who you identified as Nikkolas Oliver make several hand to hand transactions with other individuals, is that correct?

A. That's correct.

Q. The defendant got in a car, a team of officers stopped him, the defendant was found to have 7 grams of a field tested positive substance being cocaine, is that correct?

A. That's correct.

Q. An additional .2 grams field tested positive substance being cocaine was also recovered under the seat in his car, is that correct?

A. That's correct.

Q. Obviously the hand to hand transactions that officers observed would lead you to believe that the cocaine was for delivery, is that correct?

A. That's correct.

Q. And that was here in North Chicago?

A. Yes, it was."

No further evidence was presented, and the grand jury posed no questions.

On October 14, 2004, defendant moved to quash his arrest and suppress the evidence seized. At a hearing on November 12, 2004, Officers William Bell and Luis Rivera testified. Officer Bell stated that prior to August 30, 2004, the police received numerous calls informing them that individuals were selling drugs on the 1400 block of Hervey Avenue in North Chicago. Because of these complaints, Officers Bell and King were assigned to survey the area on August 30, 2004.

Officers Bell and King began their surveillance on that day at approximately 9:30 p.m., positioning themselves approximately 45 to 50 yards away from the apartments located on the 1400 block of Hervey. Although it was dark outside at that time, Officer Bell stated that the lights in the apartment building located at 1435 Hervey were on and that the streetlights in the alley next to that building were illuminated. While surveying the area, Officers Bell and King observed defendant and another man, Jason Byrd, sitting on the porch of the apartment building located at 1435 Hervey. Byrd was drinking from a Hennessy bottle.

At approximately 10:30 p.m., a man approached the building from the street, and defendant met with this man. The man tendered something to defendant, which defendant placed in his pocket. Defendant then walked toward the alley, returning 10 to 15 seconds later with something that he gave to the man. The man placed the item in his pocket and walked off in the same direction from which he had come. Although Officer Bell knew that defendant and the man exchanged something during their encounter, Officer Bell testified

that he could not see what was passed between them. Twenty minutes later, two different men approached, and defendant met with them. Each man gave defendant something, defendant placed those objects in his pocket, and then defendant walked toward a nearby fence where he retrieved something. Fifteen seconds later, defendant returned and gave each of the two men an item. The men placed what they had received in their pockets and departed. Although Officer Bell believed, based on his training and experience, that defendant was involved with selling drugs that night, he admitted that he never saw any narcotics exchanged.

Ten minutes later, defendant and Byrd drove away in a vehicle parked in the alley. Officers Bell and King maintained their surveillance of the apartment building, relaying what they observed to other surveillance units in the area.

Officer Rivera testified that he was on surveillance detail in the 1400 block of Hervey on August 30, 2004, but he did not observe what transpired in front of 1435 Hervey. Rather, Officer King told him what he and Officer Bell had seen. After receiving that information, Officer Rivera followed defendant and Byrd when they left the alley, stopping defendant's vehicle after observing Byrd drinking from a Hennessy bottle. While approaching the vehicle, Officer Rivera saw defendant reaching toward his waistband. Officer Rivera drew his weapon, advised defendant to keep his hands where they could be seen, and saw defendant reach toward the floorboard of the vehicle. Officer Rivera then opened the driver's-side door and attempted to pull defendant from the vehicle. A struggle ensued, defendant was handcuffed, and, during a pat-down search, a clear plastic bag containing a substance resembling crack cocaine fell out of defendant's pant leg. Based

on these facts, the trial court denied defendant's motion to quash his arrest and suppress the evidence seized.

On December 29, 2004, defendant was indicted on a second count of unlawful possession of a controlled substance with the intent to deliver (count III). Before the grand jury, Officer Cress testified as follows:

"Q. Just for the record this is an additional count to a case that was previously indicted by another Grand Jury. Could you please state your name and spell it for the record?

A. Officer Micah Cress, C-r-e-s-s.

Q. And you're employed by the North Chicago Police Department?

A. Yes, I am.

Q. Directing your attention to August 30th of 2004 was the North Chicago Police Department watching an apartment due to some prior drug activity that had been occurring there?

A. That's correct.

Q. And the defendant, Nikkolas Oliver, was observed making several hand to hand transactions with individuals?

A. That's correct.

Q. The defendant then got into a car and drove away and was later stopped by other members of the North Chicago Police Department?

A. That's correct.

Q. And he was found to have in his possession 10.07 grams of cocaine?

A. That's correct.

Q. And that was tested and weighed at the Northern Illinois Police Crime Laboratory?

A. Yes, it was.

Q. Additionally, there was an amount of cocaine found under the seat of his car which weighed .19 grams and tested positive for cocaine?

A. That's correct.

Q. And the hand to hand transactions as well as the amounts of the cocaine would lead you to believe that was for delivery purposes?

A. That's correct.

Q. And that occurred in North Chicago, Lake County, Illinois?

A. Yes, it did."

The assistant State's Attorney, who was the same prosecutor who appeared at the hearing on defendant's motion to quash and suppress, presented no additional evidence, and the grand jury asked no questions.

In January 2005, defendant moved for a bill of particulars, asking whether the charges of possession with the intent to deliver arose from the incidents in front of 1435 Hervey or the evidence that Officer Rivera obtained after the traffic stop. The State responded that the cocaine that defendant was charged with possessing with the intent to deliver was that found after the traffic stop. However, the State clarified that it would use the evidence obtained during Officers Bell's and King's surveillance to prove circumstantially that defendant possessed the cocaine with the intent to deliver.

Soon afterward, defendant moved to dismiss count III of the indictment, contending that Officer Cress's testimony before the grand jury was false and misleading. At the

hearing on the motion, the State admitted that Officer Cress was not present at the surveillance of 1435 Hervey. Rather, Officer Cress's testimony was based on his examination of Officer Bell's police report. The trial court considered the transcripts of Officer Cress's testimony and the testimony on defendant's motion to quash and suppress. The trial court then dismissed count III of the indictment, noting that the State engaged in a "sloppy way of presenting matters before the Grand Jury" and that the "[c]ourt has had an opportunity to comment on that before." Although there were other problems with Officer Cress's testimony, the trial court found most troubling the fact that Officer Cress testified that the hand-to-hand transactions would lead him to believe that cocaine was being delivered, yet Officer Bell, who observed the hand-to-hand transactions and prepared the report from which Officer Cress testified, did not see what was passed between defendant and the other men.

Defendant then moved to dismiss counts I and II of the indictment. The trial court dismissed count I on the same grounds on which it dismissed count III. The State timely appeals, arguing that its conduct before the grand juries did not warrant the dismissal of counts I and III of the indictment.

A trial court may dismiss an indictment on any ground in section 114--1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114--1(a) (West 2004)) or if, as defendant alleges here, the defendant has suffered a prejudicial denial of due process. People v. Hunter, 298 Ill. App. 3d 126, 130 (1998). "The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." People v. DiVincenzo, 183 Ill. 2d 239, 257 (1998). However, to permit the dismissal of an

indictment, the denial of due process must be unequivocally clear (People v. Hart, 338 Ill. App. 3d 983, 991 (2003)), and the prejudice must be actual and substantial (People v. Torres, 245 Ill. App. 3d 297, 300 (1993)).

Here, the trial court did not determine any issue of fact, instead basing its decision on the transcripts of the testimony before the grand juries and the testimony on defendant's motion to quash and suppress. Thus, we will review de novo whether defendant was denied due process and, if so, whether that denial was prejudicial. See People v. Mattis, No. 2--05--0586, slip op. at 4 (August 23, 2006) ("because the essential facts concerning what happened at the grand jury proceedings are undisputed, we review de novo whether defendant suffered a prejudicial denial of due process"); People v. Anaya, 279 Ill. App. 3d 940, 945 (1996) (when a determination as to a defendant's constitutional rights depends on a legal conclusion based on undisputed facts, the reviewing court must make its own determination). However, if a prejudicial denial of due process indeed occurred, we will reverse the trial court's ultimate decision to dismiss the indictment only if the court abused its discretion. See Mattis, slip op. at 4; People v. Polonowski, 258 Ill. App. 3d 497, 503-04 (1994) (the trial court's dismissal was an abuse of discretion when a less drastic remedy would have cured the due process violation).

In his testimony as to count I, Officer Cress explicitly stated that he himself observed the events of August 30, 2004. In his testimony as to count III, he did not explicitly say so, but he certainly testified as if he were conveying his personal observations rather than those of someone else. Thus, we have little difficulty concluding that the State presented the grand juries with deceptive or inaccurate evidence and thus denied defendant due process.

In <u>United States v. Estepa</u>, 471 F.2d 1132, 1136 (2d Cir. 1972), the court determined that a prosecutor may not mislead a grand jury into thinking that it is hearing eyewitness testimony when it is actually hearing an account whose hearsay nature is concealed. As the First District Appellate Court once noted, the <u>Estepa</u> court ordered the dismissal of the indictment per its supervisory power and did not find a due process violation. <u>People v. Willie</u>, 69 Ill. App. 3d 964, 969 (1979). However, if a prosecutor's presentation of deceptive evidence may result in a due process violation (<u>DiVincenzo</u>, 183 Ill. 2d at 257), such a violation certainly may occur when what makes the evidence deceptive is the concealment of its nature as hearsay. The Fifth District has suggested as much, citing <u>Estepa</u> to support its statement that a prosecutor's deliberate or intentional misleading may result in a due process violation. <u>People v. Barton</u>, 190 Ill. App. 3d 701, 709 (1989). Here, although a strong case could be made that the prosecutor deliberately or intentionally misled the grand juries into thinking that they were hearing eyewitness testimony when they were actually hearing hearsay, the trial court did not resolve that issue. See <u>People v. Hudson</u>, 195 Ill. 2d 117, 137 (2001) (a prosecutor's intent is a pure issue of fact, and the determination thereof lies peculiarly within the trial court's province). In any event, at a minimum, Officer Cress's testimony was deceptive in that its hearsay nature was concealed. Thus, defendant was clearly denied due process. <u>Cf.</u> <u>Mattis</u>, slip op. at 5 (no due process violation when prosecutor presented hearsay whose hearsay nature was disclosed).

We acknowledge that, in <u>Hart</u>, we stated that "there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process." <u>Hart</u>, 338 Ill. App. 3d at 991. However, as the special

concurrence pointed out, that statement was dicta (Hart, 338 Ill. App. 3d at 994-95 (McLaren, J., specially concurring)), and it seems untenable in light of DiVincenzo. As noted, there the supreme court determined that a due process violation may occur when a prosecutor "deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." DiVincenzo, 183 Ill. 2d at 257. The court relied on, among other cases, United States v. Hogan, 712 F.2d 757, 759-62 (2d Cir. 1983). In that case, as in this one, the government presented deceptive testimony, and the court held as follows:

"[The government] was duty bound not to introduce false and misleading testimony. While the factual misstatements in the *** testimony may have been inadvertent, as the government now argues, the fact remains that the [defendants] were prejudiced by the misstatements of important facts and the grand jury's independent role was impaired. See [United States v.] Samango, 607 F.2d [877,] 882 [(9th Cir. 1979)] ('Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role.' (footnote omitted))[.] *** Regardless of the government's intent, we believe that the grand jury was probably misled by this presentation." Hogan, 712 F.2d at 762.

Thus, in light of DiVincenzo, we hold that the State's presentation of deceptive evidence denied defendant due process, regardless whether the deception was intentional.

We turn now to the question of prejudice. Although it appears that no Illinois court has said so specifically, it seems fairly self-evident that a due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only

if without it the grand jury would not have indicted the defendant. See Mattis, slip op. at 5-6; State v. Edmonson, 113 Idaho 230, 237, 743 P.2d 459, 466 (1987); Black's Law Dictionary 1179 (6th ed. 1990) (a prejudicial error is one that affects the final result of the proceeding). Thus, a court must "balance the gravity and the seriousness of [the] misconduct with the sufficiency of the evidence supporting the probable cause finding." Edmonson, 113 Idaho at 237, 743 P.2d at 466; see 725 ILCS 5/112--4(d) (West 2004); People v. Benitez, 169 Ill. 2d 245, 252 (1996) (an indictment requires probable cause). If the evidence was strong enough that the grand jury would have indicted the defendant despite the misconduct, the misconduct was not prejudicial. However, if the evidence was so weak that the misconduct induced the grand jury to indict, prejudice is shown.

Here, if the only defect in Officer Cress's testimony were that its hearsay nature was concealed, we would be hard-pressed to determine that, had the grand juries known that the testimony was hearsay, they would not have indicted defendant. However, as the trial court indicated, Officer Cress's testimony was doubly deceptive. Not only was its hearsay nature concealed, but it also mischaracterized the observations of the actual eyewitness so as to establish probable cause where none existed. It is on this point that prejudice arises.

As to both counts I and III, Officer Cress testified that defendant's hand-to-hand transactions would lead him to believe that defendant intended to deliver the cocaine that he possessed. The obvious implication of that testimony was that the police's observations of the transactions supported the inference that defendant delivered cocaine in those transactions. However, Officer Bell, the actual eyewitness, never saw what was exchanged in those transactions and thus had no basis to draw that inference.

The observation of an exchange of unidentified items does not support probable cause to believe that a drug transaction has occurred. See People v. Holliday, 318 Ill. App. 3d 106, 111 (2001); People v. Moore, 286 Ill. App. 3d 649, 653 (1997); People v. Stewart, 217 Ill. App. 3d 373, 376 (1991). Here, of course, defendant engaged in two transactions, though we note that Officer Cress's testimony that he engaged in "several" was arguably misleading even on that point. See Black's Law Dictionary 1374 (6th ed. 1990) ("several" means "[m]ore than two, often used to designate a number greater than one"). In any event, we acknowledge that the repetition of the transactions "[made] it unlikely that the transactions were innocent exchanges such as 'paying off of a bet, splitting the cost of dinner or even a simple shake of hands.' " People v. Rucker, 346 Ill. App. 3d 873, 888 (2003), quoting Moore, 286 Ill. App. 3d at 653. We further acknowledge that probable cause did not require the actual observation of drugs in the exchanges. Rucker, 346 Ill. App. 3d at 889 ("our courts have never conditioned probable cause in narcotics cases on prior visual identification of a narcotic substance"). Nevertheless, assuming that there was probable cause to believe that defendant had engaged in drug transactions, those transactions clearly did not support probable cause to believe that defendant intended to deliver the cocaine that he possessed. Indeed, because Officer Bell did not see who gave what to whom, defendant just as easily could have been the purchaser in the exchanges. Cf. Rucker, 346 Ill. App. 3d at 887 (although no drugs were observed, probable cause existed in light of the multiple transactions in which the defendant was seen accepting money). Any inference that defendant delivered cocaine in the exchanges, and thus that he intended to deliver the cocaine that he possessed, was merely the result of a hunch,

which cannot support probable cause. See People v. Ortiz, 355 Ill. App. 3d 1056, 1064 (2005).

To establish probable cause for count I, the State relied on Officer Cress's inference exclusively from the hand-to-hand transactions. As to count III, however, Officer Cress testified that the transactions "as well as the amounts of the cocaine" would lead him to believe that defendant intended to deliver the cocaine. We observe that an amount of drugs, by itself, may suffice to establish probable cause to find the intent to deliver. See People v. Robinson, 167 Ill. 2d 397, 410-11 (1995) (amount alone may prove intent beyond a reasonable doubt). However, a reasonable inference of intent to deliver may arise only when the amount could not be viewed as designed for personal consumption. People v. Berry, 198 Ill. App. 3d 24, 28 (1990). The cases addressing this inference have discussed its sufficiency in meeting the standard of proof beyond a reasonable doubt, but an unreasonable inference in one context does not become a reasonable inference in another. Here, the aggregate amount that Officer Cress testified to in relation to count III, 10.26 grams, was insufficient to support a reasonable inference that defendant had the intent to deliver. See People v. Crenshaw, 202 Ill. App. 3d 432, 435 (1990) (11.2 grams is not greater than an amount intended for personal use). Thus, the amount did not support probable cause.

In sum, in light of Officer Bell's observations, neither the hand-to-hand transactions nor the amount of cocaine, alone or in tandem, provided probable cause to believe that defendant intended to deliver the cocaine. Thus, but for Officer Cress's mischaracterization of those observations, the grand juries could not have found probable cause to indict defendant for unlawful possession of a controlled substance with the intent

to deliver. As a result, the due process violation was actually and substantially prejudicial. Cf. Mattis, slip op. at 5 (discrepancies between police report and live testimony "are relatively minor details that could not have affected the grand jury's determination of probable cause").

Having properly found a prejudicial denial of due process, the trial court clearly did not abuse its discretion in dismissing counts I and III. Indeed, given that without the violation the grand juries could not have issued a proper indictment, dismissal was obviously the only appropriate remedy. Cf. Bank of Nova Scotia v. United States, 487 U.S. 250, 263, 101 L. Ed. 2d 228, 243, 108 S. Ct. 2369, 2378 (1988) (a lesser sanction, such as holding the prosecutor in contempt, requesting the bar to initiate disciplinary proceedings against him, or chastising him in a published opinion, is appropriate when the violation had no substantial effect on the grand jury's decision to charge). However, the State argues that the dismissal should not be with prejudice. We disagree.

We first note that the trial court apparently did not determine whether the dismissal was with prejudice. However, we need not remand the cause so that the trial court may exercise its discretion on this point, as a dismissal without prejudice would be an abuse of discretion. In Hunter, 298 Ill. App. 3d at 131, we stated that "the State may not seek a new indictment after criminal charges have been dismissed for the due process violation of perjury." We were careful to note that we were discussing "wilful perjury discovered and brought before the court by defendants," and we pointed out that our holding might have been different if the false testimony had been presented inadvertently or if the State had raised it to the court's attention. Hunter, 298 Ill. App. 3d at 132. Here, as noted, the trial court made no finding as to whether the deception was deliberate or intentional.

-14-

Nevertheless, the deception was crucial to the determination of probable cause, and a new indictment could result only from a new deception. Under such circumstances, it would be wholly absurd to allow the State to seek a new indictment.

On a final note, we observe that an indictment that is valid on its face may not be dismissed on the ground that the evidence supporting it is inadequate. People v. Fassler, 153 Ill. 2d 49, 60 (1992); People v. Chatman, 297 Ill. App. 3d 57, 60 (1998). Thus, we wish to emphasize that we have affirmed the dismissal of counts I and III of the indictment not on the basis that the State failed to support them with probable cause. Rather, we have affirmed the dismissal on the basis that the State violated defendant's right to due process. We have considered the adequacy of the evidence supporting counts I and III only to determine that the violation prejudiced defendant by inducing the grand juries to indict when they otherwise would not have indicted and to determine the appropriate remedy for the violation. See Edmonson, 113 Idaho at 237, 743 P.2d at 466. Of course, we do not suggest that, absent the violation, counts I and III would have been subject to dismissal for lack of probable cause.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN, J., concurs.

PRESIDING JUSTICE GROMETER, specially concurring:

While I concur in the result reached by the majority, I write separately for the following reasons. First, I do not believe that the majority's interpretation of People v. DiVincenzo, 183 Ill. 2d 239 (1998), is as straightforward as the majority concludes. Second, although the majority does not explicitly say so, the effect of its ruling in this case

is to overrule our recent decision in People v. Hart, 338 Ill. App. 3d 983 (2003). I believe such a step is unnecessary given DiVincenzo's ambiguity and that the evidence clearly shows that the State intentionally misled the grand juries.

In DiVincenzo, our supreme court stated that "[t]he due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." DiVincenzo, 183 Ill. 2d at 257. The supreme court cited three cases for this proposition: United States v. Hogan, 712 F.2d 757, 759-62 (2d Cir. 1983), People v. J.H., 136 Ill. 2d 1, 13 (1990), and People v. Barton, 190 Ill. App. 3d 701, 708-09 (1989). The majority, relying on the above-quoted statement from DiVincenzo, as well as language from Hogan, concludes that "the State's presentation of deceptive evidence denied defendant due process, regardless whether the deception was intentional." Slip op. at 10. Of course, the majority's statement implicitly overrules language in Hart that "there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process." Hart, 338 Ill. App. 3d at 991.

Admittedly, the language the majority cites from Hogan can be read to support its conclusion that the deception need not be intentional. See Hogan, 712 F.2d at 762. However, the majority fails to acknowledge contrary language in J.H. and Barton (the other two cases referenced in DiVincenzo) suggesting that intent is required. For instance, in J.H., our supreme court stated:

"[The] presentation of *** supposedly tainted testimony before [a] grand jury could not have undermined the integrity of the judicial process where other, untainted evidence connected [the] defendant to the crime, where *** the grand jury could

-16-

consider evidence so tainted in deciding whether to indict defendant, and where the evidence *** was not so clearly inadmissible that the prosecutor perpetrated a fraud on the grand jury in presenting it for consideration, <u>knowing</u> that it would not be admissible at trial. <u>A prosecutor should not be inhibited in his presentation of a case to a grand jury by fear of dismissal due to his erroneous, but honest, appraisal of the admissibility of certain evidence for trial purposes</u>." (Former emphasis in original; latter emphasis added.) <u>J.H.</u>, 136 Ill. 2d at 13.

Likewise, the <u>Barton</u> court stated, "[t]he cases are consistent that the due process rights of a defendant are violated, if the grand jury is deliberately or intentionally misled by the prosecutor." <u>Barton</u>, 190 Ill. App. 3d at 709. These cases stand for the proposition that intent is required in order for a defendant to show a violation of due process arising from grand jury proceedings.

I also point out that the language used by the supreme court in <u>DiVincenzo</u> is itself less than clear. For instance, does the phrase "deliberately or intentionally" apply to all three grounds that follow? Or does "deliberately or intentionally" apply only to the phrase "misleads the grand jury"? Because I believe that <u>DiVincenzo</u> is ambiguous on the issue of intent, I do not join in the majority's attempt to implicitly overrule <u>Hart</u>.

Moreover, I do not even find it necessary to address the issue of intent in this context. The majority bases its conclusion on the State's presentation of deceptive evidence. However, it is undisputed that a defendant's due process may be violated if the prosecutor "deliberately or intentionally misleads the grand jury." <u>DiVincenzo</u>, 183 Ill. 2d at 257; <u>J.H.</u>, 136 Ill. 2d at 13. It is on this basis--intentionally misleading the grand juries--that I would affirm the decision of the trial court.

The following evidence unequivocally demonstrates intent on the part of the State to mislead the grand juries. Officer Cress appeared before the first grand jury on September 22, 2004. At that time, he explicitly stated that he was present on August 30, 2004, when defendant was observed making several hand-to-hand transactions with other individuals. In fact, it became apparent at the November 12, 2004, hearing on defendant's motion to quash his arrest and suppress the evidence seized that Officer Cress was not a part of the law-enforcement team who observed defendant on the date in question and that the officers who were present were unable to determine what was exchanged. Nevertheless, as the majority states, during his appearance before the second grand jury on December 29, 2004, Officer Cress "certainly testified as if he were conveying his personal observations rather than those of someone else." Slip op. at 8. At a subsequent hearing on defendant's motion to dismiss count III of the indictment, the State admitted that Officer Cress was not present at the surveillance and that his testimony was based on the review of another officer's report.

The majority acknowledges that "a strong case could be made that the prosecutor deliberately or intentionally misled the grand juries into thinking that they were hearing eyewitness testimony when they were actually hearing hearsay." Slip op. at 8. Nevertheless, the majority stops short of concluding that the State intended to materially mislead the grand juries, determining that "the trial court did not resolve that issue." Slip op. at 8-9. While the trial court did not expressly find that the State intended to materially mislead the grand juries, its comments in granting defendant's motion to dismiss count III of the indictment lead me to believe that the court implicitly made such a finding. Notably, the court remarked:

-18-

"When the State gets in a position and they are leading their witness before the Grand Jury, as the typically do, they can essentially set officers up who are there trying to testify about particular matters by asking and looking for yes or no questions and put them in a box and having them do this. Some of that is before this court."

The court went on to recognize that Officer Cress did not observe the acts about which he testified before the grand juries, and it noted that the officer who testified at the hearing on defendant's motion to quash and suppress (and who actually witnessed the conduct for which defendant was indicted) contradicted Officer Cress's testimony. Therefore, while I concur with the majority's decision that defendant has suffered a prejudicial denial of due process, I do so not on the basis that Officer Cress's testimony was deceptive, but because the State intentionally misled the grand juries.