# Illinois Official Reports

## Appellate Court

---

### *People v. Tetter*, 2019 IL App (3d) 150243-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KYLE J. TETTER, Defendant-Appellant. |
| District & No. | Third District No. 3-15-0243 |
| Filed Rehearing denied | November 26, 2019 December 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 13-CF-291; the Hon. Kathy Bradshaw-Elliott, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant. James R. Rowe II, State's Attorney, of Kankakee (Patrick Delfino, Lawrence M. Bauer, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Justices Lytton and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, age 21 at the time, began a relationship with S.K., who represented herself to be 18. A jury found that defendant continued this relationship after learning S.K. was 16 and convicted him of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2012)). After his conviction, the trial court sentenced defendant to 180 days in county jail, 4 years' sex offender probation, and mandatory lifetime sex offender registration.

¶ 2    On appeal, defendant seeks a new trial; he alleges the trial court erred in admitting and publishing a voicemail recording during defendant's cross-examination. Defendant also raises, for the first time on appeal, a constitutional challenge claiming the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2012)), Sex Offender Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2012)), residence and presence restrictions within 500 feet of school zones or 100 feet of school bus stops (720 ILCS 5/11-9.3 (West 2012)), residence and presence restrictions within 500 feet of a public park (*id.* § 11-9.4-1), mandatory annual driver's license renewal (730 ILCS 5/5-5-3(o) (West 2012)), and prohibiting defendant from petitioning to change his name (735 ILCS 5/21-101 (West 2012)) impose disproportionate punishment as applied to him. We refer to these statutes collectively as "sex offender statutes" herein.

¶ 3    Originally, this court unanimously affirmed the trial court's evidentiary ruling regarding the voicemail recording. A majority found that defendant's lifetime subjection to the sex offender statutes constitutes grossly disproportionate punishment as applied to him. The facts underlying defendant's conviction do not suggest that he is a dangerous sexual predator who must be banned from areas near schools or public parks or who must be monitored by law enforcement authorities and presented to the public as a dangerous sexual predator.

¶ 4    In a supervisory order, our supreme court directed us to vacate our judgment in this case and consider the effect of *People v. Bingham*, 2018 IL 122008, on defendant's as-applied challenge. And so we do.

¶ 5                                    I. BACKGROUND

¶ 6    On July 12, 2013, the State charged defendant with aggravated criminal sexual abuse, a Class 2 felony (720 ILCS 5/11-1.60(d) (West 2012)). On October 4, 2013, defendant pled guilty in exchange for four years' sex offender probation and no jail time. On November 1, defendant submitted a motion to withdraw his guilty plea; he alleged that he did not know pleading guilty meant he would be subjected to the sex offender statutes' registration requirements and restrictions for life. Defendant's motion also alleged an affirmative defense—he reasonably believed S.K. to be 18 each time they had sex. The trial court granted defendant's motion on December 20. Defendant's trial began on January 13, 2015.

¶ 7    Sixteen-year-old S.K. testified that she registered for a social networking website called "MeetMe" sometime after July 2012. S.K.'s MeetMe profile represented to other users that she was 18. Defendant was 21 when she "met" him on MeetMe.

¶ 8    Defendant and S.K. also communicated through another online application called "Kik." They met in person for the first time in November 2012. Defendant picked S.K. up at her high school and took her home. Defendant asked S.K. to be his girlfriend, and she agreed.

¶ 9    They began having consensual sex in defendant's car after a few meetings in November 2012. Although she could not remember the date, S.K. testified that she and defendant had sex once at her house when her parents were away; she did not consent to this sexual encounter.

¶ 10    Sometime in January or February 2013, S.K. left defendant a voicemail wherein she referred to herself as "a stupid 16-year-old." She left the voicemail after learning that defendant still communicated with his ex-fiancée. S.K. testified that defendant responded to this voicemail with a text message, but she could not recall the substance of the message.

¶ 11    On March 26, 2013, S.K. ran away from home. She testified that she argued with her parents about photographs on her phone that she sent to defendant. Her parents confiscated her phone, and her mother told her to leave the house. S.K. then called defendant from Kmart to tell him she ran away. Police picked her up from the Kmart after she spoke with defendant.

¶ 12    S.K. stated she and defendant had sex several times between March 26 and late April 2013. On June 8, 2013, an ultrasound confirmed that S.K. was approximately two months pregnant. When she informed defendant that she was pregnant, he asked her to choose him or the baby—her daughter was born December 31, 2013.

¶ 13    S.K.'s mother testified that she learned defendant was 21 after S.K. began meeting with him in November 2012. S.K.'s parents did not want her dating until she turned 18 and forbade her from having a relationship with defendant.

¶ 14    In December 2012, S.K.'s mother accompanied her to a local mall where she rang bells for the Salvation Army. When defendant arrived to see S.K., her mother confronted him. She informed defendant that her daughter was 16 and threatened to "ruin" him if he touched her. S.K.'s mother reported defendant to the police soon after learning S.K. was pregnant in June 2013.

¶ 15    Detective Robert Mason testified that he arrested defendant on July 2, 2013. Defendant voluntarily turned over his cell phone and agreed to videotape his interview at the police station. Mason sent defendant's cell phone to the United States Secret Service Chicago Electronic Crimes Division (Secret Service) for forensic analysis. The Secret Service provided Mason with a thumb drive containing the evidence from defendant's phone. The trial court admitted the thumb drive into evidence, and the jury viewed defendant's videotaped interview.

¶ 16    During the interview, defendant stated that he believed S.K. was 18 based upon her MeetMe profile representation. He denied ever picking S.K. up from school; he claimed that they always met at a Subway restaurant. Defendant estimated that he and S.K. had sex approximately five or six times—always consensual and never at her house. He admitted to having sex with S.K. once after he learned that she was 16.

¶ 17    At trial, defendant testified on his own behalf. He stated that he lied about having sex with S.K. after learning her age during the police interview because he was scared and disoriented. He claimed that he never knew S.K. was 16 until he spoke with police on March 26, 2013. He never had sex with S.K. thereafter.

¶ 18    During cross-examination, the State played the February 2013 voicemail recording in which S.K. referred to herself as "a stupid 16-year-old." Defendant objected to the recording; he alleged the State failed to establish proper foundation. The State pointed out that S.K. testified during the prosecution's case-in-chief that she left the voicemail on defendant's phone. The State also assured the trial court that S.K. and Mason would provide additional foundation on rebuttal. The trial court allowed the State to play the recording.

¶ 19    S.K. and Mason testified during the prosecution's rebuttal. S.K. heard the recording during defendant's cross-examination; she identified her voice and confirmed that the recording accurately portrayed the voicemail she left on defendant's phone. She stated that she left the voicemail after an orchestra concert in February 2013. Although Mason identified the Secret Service thumb drive, he could not identify the Secret Service's methods used to extract defendant's cell phone information or verify the thumb drive's contents.

¶ 20    At the close of evidence, defense counsel moved for a mistrial. He alleged that the State failed to establish adequate foundation for the voicemail before or after playing it during defendant's cross-examination. Although S.K. identified her voice and verified that she left the voicemail on defendant's phone, defense counsel argued that the State failed to prove that the information on the thumb drive, including the voicemail, came from defendant's phone. The trial court denied the motion. The jury found defendant guilty.

¶ 21    At the sentencing hearing, the trial court heard and denied defendant's posttrial motion. Defendant's presentence report showed that he had no prior criminal convictions other than minor traffic violations. The presentence report also contained defendant's sex offender psychological evaluation. The Kankakee County court referred defendant to Dr. Simone, a licensed clinical psychologist, for the evaluation. Simone determined that defendant presented a low risk to reoffend and recommended outpatient sex offender counseling. During the evaluation, defendant placed in the zero percentile (virtually no risk) on the child molestation scale, drug use scale, and alcoholism scale.

¶ 22    The trial court sentenced defendant to 180 days in county jail, 4 years' sex offender probation, and lifetime subjection to the sex offender statutes' registration and restrictions. After sentencing, defendant asked the trial court to prepare a notice of appeal and to appoint appellate counsel; the court agreed. Due to an administrative error, the deputy circuit clerk filed defendant's notice of appeal on April 13, 2015, well after the filing deadline. The clerk attached a letter asking this court to allow the late notice. On September 8, 2015, we allowed an agreed motion to treat the notice as timely and assumed jurisdiction over this appeal.

¶ 23                                   II. ANALYSIS

¶ 24    Defendant's appeal raises two distinct claims and seeks two separate forms of relief. First, he argues that the trial court abused its discretion by allowing the State to play S.K.'s voicemail during defendant's cross-examination. He claims that this error warrants a new trial. Second, defendant makes an as-applied constitutional challenge against the sex offender statutes. He argues that the sex offender statutes' requirements and restrictions, as applied to him, constitute disproportionate punishment under both the Illinois Constitution and United States Constitution. We address each issue separately below.

¶ 25                      A. Authentication of the Voicemail Recording

¶ 26    Defendant asserts that he was denied a fair trial when the trial court allowed the State to play S.K.'s voicemail during his cross-examination. He argues the State failed to establish proper foundation before or after playing the recording. Defendant claims the State needed to present independent evidence to prove the thumb drive's contents, including the voicemail, came from his phone.

¶ 27    The jury's verdict hinged on whether defendant reasonably believed S.K. was 18 during each sexual encounter. Conflicting testimony rendered witnesses' credibility key to this issue. Defendant claims that the court's erroneous admission and publication of the voicemail unfairly influenced the jury's verdict and tainted the trial.

¶ 28    The State argues that S.K.'s testimony established sufficient foundation for the voicemail when she identified her voice in the recording and testified that the recording was the voicemail she left on defendant's phone in February 2013. In the alternative, the State argues that any error was harmless. According to the State, other evidence and testimony proved defendant either knew S.K. was 16 years old prior to March 26, 2013, or had sex with her thereafter.

¶ 29    The trial court exercises its sound discretion in admitting evidence; the court's judgment will not be reversed absent an abuse of this discretion. *People v. Taylor*, 2011 IL 110067, ¶ 27. A trial court abuses its discretion when its judgment is "fanciful, unreasonable or when no reasonable person would adopt the trial court's view." *Id.*

¶ 30    As with any evidence, the party seeking admission of an audiotape must establish an adequate foundation. *People v. Williams*, 109 Ill. 2d 327, 338 (1985). The party establishes sufficient foundation when "a witness to the conversation recorded on the tape *** testifies that the tape, as it exists in court, accurately portrays the conversation in question." *Id.*; see also *People v. Johnson*, 2016 IL App (4th) 150004, ¶¶ 66-67. The Illinois Rules of Evidence state that evidence is authenticated where a witness with knowledge testifies that "a matter is what it is claimed to be." Ill. R. Evid. 901(b)(1) (eff. Jan. 1, 2011).

¶ 31    If no witness with personal knowledge is available, parties may authenticate recordings under the silent witness theory "if there is sufficient proof of the reliability of the process that produced the photograph or videotape." *People v. Vaden*, 336 Ill. App. 3d 893, 898 (2003). This method of authentication is available only *when no party to the conversation testifies to the accuracy of the recording*.

¶ 32    The crux of defendant's argument is "that there was no evidence that the recording was actually retrieved from defendant's phone." He argues that the State could not establish "who recorded the message, when it was recorded, where it was recorded, or what was done with the recording since it was made. *** For all we know, the recording was made of [S.K.'s] voice the day before trial began."

¶ 33    This argument champions the standard used under the silent witness theory. However, S.K. testified that the recording accurately reproduced the message she left on defendant's phone:

> "Q. [S.K.], you were in the courtroom when I played an audio recording, is that correct?
>
> A. Yes, ma'am.
>
> Q. Did you recognize that audio recording?
>
> A. Yes.
>
> Q. And what did you recognize that to be?
>
> A. It was a conversation that me and [defendant] had via text that was an argument. He stopped responding to me so I had called him.
>
> Q. Okay. So what we heard was—who was the voice on the recording that we heard?
>
> A. Me.

Q. Okay. And did you tell that directly to [defendant] or what did—how did that message get to [defendant]?

A. I just had called his cell phone and had left the message. It was directly—it was directed towards him.

Q. Okay. But it was on his voicemail?

A. Yes ma'am.

Q. Okay. And do you have any indication from [defendant] that he ever listened to it?

A. He had responded shortly thereafter via text.

\*\*\*

Q. And do you recall when that conversation was—or when that voicemail was that you left him?

A. It would have been in February. I believe it was shortly after like an orchestra concert I had had and he was talking about the fact that his ex-fiancée had made a Facebook post regarding the fact that he had come to a high school orchestra.

Q. Okay. And that would be—that would have been February of what year?

A. Of 2013."

¶ 34   This testimony established adequate foundation for the recording. S.K. identified her own voice and stated that she left the voicemail on defendant's phone in February 2013. Defense counsel was free to challenge the thumb drive's source or S.K.'s credibility, but such impeachment would attack the voicemail's evidentiary weight, not its admissibility. Once S.K. identified her voice and provided context to the recording, it was admissible.

¶ 35   We hold that the trial court did not abuse its discretion by allowing the State to play the recording during defendant's cross-examination. We need not address the State's alternative harmless error argument. However, we note that during his police interview, defendant admitted that he had sex with S.K. once after learning her age. S.K. and her mother also testified that defendant knew S.K.'s age as early as December 2012. The State did not rely solely on the voicemail to prove defendant's guilt.

¶ 36          B. Constitutionality of Illinois Sex Offender Statutes as Applied to Defendant

¶ 37   Previously, a majority of this court found that the sex offender statutes at issue constitute punishment and were unconstitutional as applied to this defendant. Subsequent to our decision, our supreme court issued its opinion in *Bingham*, 2018 IL 122008. The supreme court then issued a supervisory order commanding this court to vacate our judgment in this matter and reconsider in light of *Bingham*.

¶ 38   *Bingham* mandates that this court has no jurisdiction to address this as-applied challenge on direct appeal. The court ruled that even if the SORA statute's requirements constitute punishment, it would not be punishment imposed by the trial court. *Id.* ¶ 18.

¶ 39                                    III. CONCLUSION

¶ 40   For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 41   Affirmed.