**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180536-U

Order filed March 26, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0536 Circuit No. 17-CF-345 |
| | ) | |
| JUSTIN M. GIACOBAZZI, | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Lytton and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not subject defendant to an improper double enhancement. This court lacks jurisdiction to consider defendant's as-applied constitutional challenge to the Illinois statutory requirements for convicted sex offenders.

¶ 2     Defendant, Justin M. Giacobazzi, appeals his criminal sexual assault and aggravated criminal sexual abuse convictions. Defendant argues: (1) the Peoria County circuit court subjected him to an improper double enhancement when it considered a factor inherent in the offense of criminal sexual assault as an aggravating factor in sentencing, and (2) the statutory scheme of

lifetime penalties for convicted sex offenders is unconstitutional as applied to him. We affirm defendant's sentences and dismiss defendant's constitutional challenge for lack of jurisdiction.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant with criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2016))[1] and aggravated criminal sexual abuse (*id.* § 11-1.60(d)). The State alleged that defendant engaged in acts of sexual conduct and sexual penetration with the victim, V.G., who was over the age of 13 but under the age of 18 and that defendant held a position of authority, supervision, or trust over V.G. The matter proceeded to a jury trial.

¶ 5        The evidence established that defendant was the boyfriend of V.G.'s mother. Defendant resided in the same home as V.G. and had a parental role in V.G.'s life. When V.G. was 15, she and defendant had a sexual relationship which progressed from cuddling and kissing, to fondling, oral sex, and sexual intercourse. V.G. said when she and defendant first had sexual intercourse, it hurt when defendant put his penis in her vagina but then she went numb from the waist down. Eventually, V.G. reported defendant's actions to the police and a doctor examined her. A doctor told V.G. that she was "ripped from [her] vagina to [her] butt." The State introduced a variety of corroborating evidence, including text messages between defendant and V.G., a handwritten entry from V.G.'s diary, and internet searches of a sexual nature performed by V.G.

¶ 6        The jury found defendant guilty on both counts and the matter proceeded to a sentencing hearing. The presentence investigation report (PSI) indicated that defendant did not have any prior criminal convictions, had been honorably discharged from the military, and was employed prior

_____

[1]We note, as the parties do, that the indictment erroneously cited to subsection (a)(1) when it should have cited to (a)(4) because (a)(4) is the subsection that refers to a position of authority, trust, or supervision over the victim 720 ILCS 5/11-1.20(a)(4) (West 2016).

to his incarceration. The PSI also indicated that defendant had a moderate risk for reoffending, and that defendant denied responsibility for the offenses.

¶ 7    The State argued, in aggravation, that a lengthy sentence was necessary to deter others. It then stated, "most importantly, Judge, I'd ask you to consider factor 14, and that being that the defendant held a position of trust or supervision over [V.G.]" The State asserted that defendant acted like a stepfather to V.G. and that was "a pretty significant factor in aggravation." The State reiterated that this was not just a single act of illegal behavior but multiple acts over a period of months.

¶ 8    The defense argued, in mitigation, that defendant did not have a criminal history and a long sentence would entail an excessive hardship to his dependents, as defendant had a minor child with V.G.'s mother. The defense asked the court to consider defendant's military service and prior employment as factors in mitigation.

¶ 9    In allocution, defendant said he would "like to apologize to all that may have been affected." Defendant understood the verdict but did not "necessarily agree with the verdict." Defendant requested leniency.

¶ 10    The court found only one factor in mitigation: defendant had no criminal history. In aggravation, the court said it was "going to assume that tearing someone from the vagina to the rectum is serious harm." It further found that the sentence was necessary to deter others from committing the same crime, and "[t]he defendant held a position of trust or supervision over the victim." The court indicated that it was "forced to make these findings." It then stated the evidence in this case was overwhelming and "[j]ust about all of what [it] heard was undisputed, and it was incriminating the defendant." The court noted "[t]hat [it] certainly counts" that defendant had no

3

criminal history and that would be acknowledged in his sentence. The court also took into consideration "in a big way" that defendant served his country in the military.

¶ 11    The court then turned to the justifications for a lengthier sentence. It stated:

> "[t]here's such a conniving part to defendant's actions here. This is so far removed from being at a party and being drunk and crossing a line here one time. Or sometimes people say they didn't know the age of the victim, or whatever. This is so far removed from this, it's ridiculous. Oh, my god. All the planning, the preying, P-R-E-Y-I-N-G, on a minor, a minor female, the amount of preparation, I don't know what, that happened here is just stunning, which shoots that sentence way up."

It continued "Let me again emphasize the sheer audacity of this, the many, many times that it happened under the roof of [defendant's] girlfriend." The court noted that it was taking into account defendant's ability to be rehabilitated and again emphasized that defendant was getting credit for not having a criminal history and having served in the military.

¶ 12    The court sentenced defendant to 12 years' imprisonment with a life term of mandatory supervised release (MSR) for criminal sexual assault and 5 years' imprisonment with 2 years' MSR for aggravated sexual abuse. The court asked if there was anything else and the State said that defendant would be required to register as a sex offender for life, which the court reiterated.

¶ 13    Defendant filed a motion to reconsider sentence arguing the sentence was excessive and that the court did not adequately consider various factors in mitigation in sentencing defendant. During argument at the hearing, the State mentioned that defendant was in a position of authority over V.G. The court stated "[s]ome would wonder how someone with no priors whatsoever got 12

4

on a 4 to 15 range. I will explain today again like I did on the sentencing date of June 20th." The court then explained,

"[t]his case was stunning on more than one level. Many months of grooming of the victim by the defendant. Showed such a calculating nature. Diabolical is a word I would use which I never used on the bench before. I'll use it here, though.

Talk about diabolical. Someone close to the role of a father, certainly not officially a father or stepfather, but the adult male in the household. It's stunning the acts that were engaged in, and acts is plural, meaning more than one."

The court continued,

"[t]he extreme amount of planning, the cunning nature of [defendant] throughout these events makes this rise up the scale of seriousness and increases what a prison term should be. There are different levels of these types of offenses. This was—I don't know—maybe the worst. I can't think of a worst right now. The girl who lives in your house, almost stepdaughter ***.

***

*** I don't know what the defendant could have done while engaging in these events that would have been worse than what he did do."

The court observed, V.G.'s "testimony is it hurt, his penis in my vagina. *** It hurt. Then I went numb below the waist. *** When she ultimately went to the doctor, the doctor said she was ripped from vagina to butt." The court emphasized the "avalanche amount of evidence against the defendant" which "goes toward guilt, but it also, the reason I say that is it shows the cunning, vile nature of what the defendant did. Four to fifteen. I give him six. Are you kidding me?" The court

5

further stated that "[s]omeone who would go to that level of cunning, diabolical actions, and I think that reflects on his ability to be rehabilitated and I'm unsure—maybe someone can educate me on this—how someone can say, oh, I didn't do it, and then be fixed, be rehabilitated." The court denied the motion to reconsider. Defendant appeals.

¶ 14                                              II. ANALYSIS

¶ 15                                          A. Double Enhancement

¶ 16        Defendant argues that he was subjected to an improper double enhancement because the court considered the fact that he was in a position of authority, trust or supervision over V.G. as both an element of the offense of criminal sexual assault and as a factor in aggravation. From our review of the record, we find the court placed an insignificant amount of weight on the fact that defendant held a position of authority, trust or supervision over V.G. when it formulated defendant's sentence.

¶ 17        As an initial matter, we note that defendant forfeited his right to challenge the purported double enhancement because he failed to raise this issue in the circuit court. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant acknowledges this forfeiture but asks that we review the issue under the second prong of the plain error doctrine. Under that prong, a reviewing court may remedy a "clear or obvious" error when "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in applying the plain error doctrine is to determine if an error occurred. *Id.*

¶ 18        In determining whether the court based the sentence on an improper factor, "a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). "Generally, a factor

6

implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Id.* at 12. It is defendant's burden to show that the circuit court considered an improper factor in determining a sentence. *People v. Grant*, 2019 IL App (3d) 170185, ¶ 28.

> "On appeal, a reviewing court will not vacate a sentence that was based upon an improper factor and remand for resentencing if the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Id.*

¶ 19 Here, although the court arguably should not have mentioned defendant's position of authority, trust, or supervision over V.G. as it is an element of the offense of criminal sexual assault (see 720 ILCS 5/11-1.20(a)(4) (West 2016)), the totality of the court's comments establish that it placed an insignificant amount of weight on this factor. Instead, the court's comments, including those made in denying defendant's motion to reconsider sentence, establish that the court emphasized in aggravation the nature of the offense and conniving nature of defendant's actions. As set forth in detail above, the court repeatedly noted, the planning and grooming involved and that these crimes took place over a period of months. *Supra* ¶¶ 11, 13. While the State brought up the position of authority during the reconsideration hearing, the court did not mention that factor during any of its reconsideration findings, further showing that it put an insignificant amount of weight on that factor.

¶ 20 Defendant points to the court's references to defendant as essentially being a stepfather to V.G. as support for his contention that the court was relying on the position of supervision or trust

7

as an aggravating factor. But, " ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" ' " may be considered in sentencing a defendant. *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986) (quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981), quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981)). Thus, the court properly considered the nature or extent of defendant's position of trust or supervision over V.G., which was a parental role, in formulating defendant's sentence. Based on the foregoing, we affirm defendant's sentences.

¶ 21                                     B. Constitutional Challenge

¶ 22      Defendant argues that the requirements of the Illinois Sex Offender Registration Act (SORA) including registration, community notification, and restrictions on movement and employment are unconstitutional as applied to him. See 730 ILCS 150/1 *et seq.* (West 2016); 720 ILCS 5/11-9.3, 11-9.4-1 (West 2016); 730 ILCS 5/5-5-3(o) (West 2016); 735 ILCS 5/21-101 (West 2016). He asserts that this court has jurisdiction to consider the challenge because unlike *People v. Bingham*, 2018 IL 122008, ¶ 18, the circuit court here ordered defendant to register as a sex offender.

¶ 23      In *People v. Tetter*, 2019 IL App (3d) 150243-B, ¶ 2, this court considered an as-applied challenge to the same statutes defendant challenges in the instant appeal. In *Tetter*, the circuit court ordered defendant to register as a sex offender. On appeal, this court, pursuant to *Bingham*, determined that we lacked jurisdiction to consider the as-applied challenge because *Bingham* held "that even if the SORA statute's requirements constitute punishment, it would not be punishment imposed by the trial court." *Id.* ¶¶ 22, 37-38 (citing *Bingham*, 2018 IL 122008, ¶ 18). Consistent with *Tetter*, we conclude that we lack jurisdiction to consider defendant's as-applied constitutional challenges to SORA and the other statutes specified above. See also *People v. Kochevar*, 2020 IL

8

App (3d) 140660-B, ¶¶ 16, 33-35 (concluding this court lacked jurisdiction to consider an as-applied challenge to SORA even though the circuit court ordered defendant to register as a sex offender).

¶ 24                               III. CONCLUSION

¶ 25          We dismiss the portion of defendant's appeal challenging the constitutionality of SORA. In all other respects, we affirm the judgment of the circuit court of Peoria County.

¶ 26          Appeal dismissed in part; affirmed.