**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200511-U

Order filed April 6, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-20-0511 |
| v. | ) | Circuit No. 15-CF-367 |
| | ) | |
| KEVIN E. BARNETT, | ) ) | Honorable Daniel L. Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The circuit court did not err by denying the defendant's motion to dismiss the superseding indictment. (2) The defendant forfeited the arguments regarding the overhear recordings. (3) The court did not err by allowing evidence of other bad acts. (4) The evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. (5) This court lacks jurisdiction to consider the defendant's as-applied constitutional challenge to the Illinois Sex Offender Registration Act.

¶ 2    The defendant, Kevin E. Barnett, appeals his convictions for aggravated criminal sexual abuse. The defendant argues that the Will County circuit court erred by denying his motion to dismiss the superseding indictment, admitting overhear recordings into evidence, and admitting

evidence of other bad acts. He further argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Last, he argues that the Illinois Sex Offender Registration Act (SORA) is unconstitutional as applied to him and that, in any event, the registration requirement in effect at the time of the offenses should apply.

¶ 3                                                    I. BACKGROUND

¶ 4          The State charged the defendant by superseding indictment with seven counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 1996)). Pertinent to this appeal, count II alleged that between January 7 and 8, 1999, the defendant "placed his penis upon the body of K.M." K.M. was 14 at the time, and the defendant was 26. Count III alleged that between January 7 and 8, 1999, "the defendant placed his mouth upon the breasts of K.M." Count IV alleged that on or about November 22, 1997, "the defendant placed his mouth upon the breasts of K.M." The remaining counts alleged the defendant placed his hands on K.M.'s vagina or breasts between March 1, 1997, and November 30, 1999.

¶ 5          Prior to trial, the State filed a motion *in limine* to admit other bad acts evidence involving the defendant and K.M. The State alleged that K.M. made statements that when she had visited her sister, T.R., and the defendant (her sister's ex-husband) in Florida in 1997 and 1998, "the defendant and her would take showers, the defendant would put his finger in her vagina and would touch her breasts, she would rub his penis, and they would kiss and slow-danced together. On one occasion, the defendant placed his penis in her mouth." The State argued that the evidence was admissible on various bases, including pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2018)). The defendant requested an evidentiary hearing, which the court denied. The court conducted an *in camera* review of the

police reports and various statements by K.M., T.R., and the defendant. The court granted the motion.

¶ 6    The defendant filed a motion to dismiss the superseding indictment. The motion alleged that during the grand jury proceedings, the State asked Detective William Sheehan, "During the overhears, did the defendant admit that he faintly remembers that [K.M.] gave him oral sex at one time?" and Sheehan responded "Yes." The motion argued that this testimony was false and misleading and that no such admission was made by the defendant during the overhears. Further, the motion alleged that "the State misled and deceived the grand jury when answering the Jurors' questions regarding the Defendant's coaching and sex offender status." In this regard, the motion argued that it was irrelevant that the defendant coached softball. At the hearing on the motion, the defendant tendered a copy of the transcripts, Sheehan's revised report, and the relevant overhear recording as exhibits. The defendant's argument during the hearing focused on the purported admission that the defendant "faintly remember[ed]" and did not address the grand jury's question regarding the defendant coaching.

¶ 7    The State argued that it "listened to the tape before we put the detective on the stand in the Grand Jury. That is what was said before the Grand Jury and that is what is on the overhear." The State told the court that it believed that if the court listened carefully, it would hear the defendant state that he "faintly remember[ed]." The State contended that it had listened to the tape several times and that even if it misheard the tape, it was not falsified, deliberate or intentional. It further contended that Sheehan would stand by his testimony, The State reiterated that it believed defendant said "I don't know, [K.M.], I faintly remember" on the overhear and that is why it presented it to the grand jury. The court read the exhibits and listened to the recording. It denied the motion.

¶ 8        At the bench trial, evidence established that K.M. was born March 11, 1984, and defendant was born October 31, 1972. K.M. testified that she originally had a brother/sister-like relationship with the defendant. They would often play wrestle. On one occasion in 1997, when they were wrestling, the defendant grabbed her breasts. She indicated it was intentional, although admitted she had previously described it as accidental. Sometime after this incident, in July 1997, the defendant and T.R. moved to Florida. The defendant returned to Illinois in October 1997 for a family reunion. While in Illinois, the defendant again touched K.M.'s breasts.

¶ 9        On November 22, 1997, the defendant was in Illinois for K.M.'s grandparents' anniversary party. She and the defendant made an excuse to leave the party, which she stated was for her to change clothes. There were discrepancies in K.M.'s testimony and previous statements as to what that excuse was. When K.M. and the defendant left the party, they went to K.M.'s parents' house and

> "were kissing each other and using our tongues, and he was feeling my breasts and lifted up my shirt and moved my bra and was kissing my breasts and *** sucked my nipples and used his teeth to drag my nipples, and then while we were kissing and our bodies were dry humping."

She described "dry humping" as their "bodies were pressed against each other. I could feel his erection. His hands were touching my breasts and under my shirt and was rubbing on top of my underwear." K.M. stated that the defendant used his hand to rub her vagina. The State admitted into evidence a VHS tape depicting portions of the anniversary party, which K.M. stated was accurate to the best of her knowledge. The defendant objected as to the reliability of the tape, noting that there were time gaps in the tape. The court allowed the tape into evidence. K.M. identified herself and the defendant on the tape.

4

¶ 10     K.M. testified that in July 1998, she visited the defendant and T.R. in Florida. K.M. thought of the defendant as a boyfriend at that time. During the visit, the defendant showered with K.M. once. In the shower, they kissed, their bodies touched, and the defendant kissed K.M.'s breasts and rubbed her vagina. On another occasion, the defendant was stroking his penis and K.M. put her mouth on his penis. She stated that the defendant showed her how and she "gave him a blow job." On another occasion, while the defendant and K.M. watched a movie together, the defendant rubbed her vagina and breasts while she touched his penis.

¶ 11     During a December 1998 visit to Florida, K.M. and the defendant kissed using their tongues. Their bodies were pressed together, and the defendant had an erection.

¶ 12     In January 1999, the defendant returned to Illinois for K.M.'s grandfather's funeral.[1] The defendant and K.M. left the funeral and went to her parents' home. There, they kissed, they "dry hump[ed]" and their bodies rubbed against each other. The defendant put his fingers in her vagina and kissed her breasts and bit her nipples. The defendant had an erection.

¶ 13     Aside from these specific instances of sexual contact with the defendant, there were other times that they would kiss, the defendant would touch her breasts, and the defendant would put his finger in her vagina. She could not recall exact dates or specifically how many times, but it happened frequently.

¶ 14     In January or February 1999, K.M. testified that the defendant sent her an email which stated that he missed touching and holding her. She did not recall what she did with the email and a copy was not introduced into evidence. T.R. confronted K.M. about K.M.'s relationship

---

[1]The transcript states that it was for her "Grandma['s]" funeral. This was an apparent misstatement, as all other references indicate it was the grandfather's funeral.

with the defendant after the email. The defendant told her to tell T.R. that the defendant was comforting her because she was upset her grandfather died and that is what K.M. did.

¶ 15    K.M. reported the abuse to the police in November 2013. In 2014, K.M. participated in various recorded conversations with the defendant pursuant to court-approved consensual overhears. When the State sought to admit the first of the overhear recordings, defense counsel objected stating that he had a standing objection to all the overhear recordings and the objection was "to the appropriateness of the overhear itself." The court overruled the objection and the overhear recordings were admitted into evidence and played for the court.

¶ 16    During the first overhear recording, K.M. told the defendant that they never talked about what happened years ago and it bothered her. When K.M. asked if he ever told anyone, the defendant said no and then stated he did a complete turnaround in his life. Further, he acknowledged that what happened was inappropriate for both of them. When confronted with specific allegations, the defendant stated that he had "somewhat mentally blocked all of that." Over the course of the recordings, the defendant apologized but did not explicitly admit to any specific allegations K.M. made, other than kissing her.

¶ 17    During cross-examination, the defense highlighted various discrepancies in K.M.'s testimony or between K.M.'s testimony and her prior statements. Additionally, counsel elicited testimony that K.M. lied to the defendant during the recorded conversations and that her goal during the conversations was to get the defendant to admit to the sexual contact she alleged occurred between them.

¶ 18    T.R. testified that in February 1999, she found an email from the defendant to K.M. that stated that the defendant missed holding, touching, and kissing K.M. She confronted the defendant, and they argued about the email. The defendant told T.R. to call K.M. and ask her

6

about it. T.R. called K.M. and confronted her. She believed what K.M. told her. K.M. printed a copy of the email and kept it until she shredded it in 2004.

¶ 19    In August 2014, T.R. called the defendant and told him she had a conversation with K.M. The defendant apologized for hurting her and K.M. The defendant did not have an answer when T.R. asked him why he did it.

¶ 20    Marc Reid, a lieutenant with the Joliet Police Department, testified that he knew the defendant. In March 2015, the defendant asked if he would be willing to speak on his behalf for an upcoming court matter. The defendant described the matter as "approximately 18 years ago, ex-boyfriend/girlfriend relationship, and the ex-girlfriend was alleging that the relationship went too far." Reid testified on the defendant's behalf at a bond condition hearing.

¶ 21    After the State rested, the defendant moved for a directed verdict. The court granted a directed verdict as to count VII. Defense counsel called Sheehan as a witness and questioned him regarding statements made by K.M., Sheehan's report, and Sheehan's testimony in front of the grand jury. After the close of evidence, the court found the defendant guilty of counts II, III, and IV and not guilty of counts I, V, and VI.

¶ 22    Defense counsel filed a motion for judgment notwithstanding the verdict and for a new trial. The motion argued there was insufficient evidence to find the defendant guilty beyond a reasonable doubt. It further argued that the court erred in granting the State's motion to admit other bad acts evidence and admitting the VHS tape because this evidence was not probative and was overly prejudicial. The motion also argued that: (1) the court erred in denying the defendant's motion to dismiss the superseding indictment; (2) the court erred in not sustaining objections and striking testimony, although it does not reference any specific instances; and (3) "[t]he Court also erred in admitting into evidence each and every exhibit offered by the State to

7

which the Defendant objected" and allowing the State to make inflammatory and prejudicial remarks in closing arguments. At the hearing, counsel largely stood on the written motion, but made some argument as to the sufficiency of the evidence and the alleged error in admitting evidence of other bad acts. The court denied the motion.

¶ 23    The defendant also filed a motion arguing that the SORA requirements were unconstitutional as applied to him, and that regardless, he should be allowed to choose whether to be subject to the SORA requirements in effect at the time of the offense or those in effect at the time of sentencing. The court denied the motion. It sentenced the defendant to 60 days in jail and 30 months' probation. The court entered orders certifying the defendant as a sex offender, and notifying the defendant that he must register, that the failure to register shall result in probation revocation, and the period of registration is natural life. The defendant appeals.

¶ 24                                    II. ANALYSIS

¶ 25                        A. Motion to Dismiss the Superseding Indictment

¶ 26    The defendant argues that the court should have granted his motion to dismiss the superseding indictment because the State presented false and misleading testimony and irrelevant information to the grand jury. Specifically, the State elicited testimony that the defendant stated he "faintly remember[ed]" K.M. giving him oral sex and that it allowed a question from the grand jury regarding whether the defendant was coaching at that time.

¶ 27    The State argues this court must presume the circuit court's denial of the defendant's motion to dismiss was proper because the grand jury transcripts are not contained in the record on appeal. See *People v. Fair*, 193 Ill. 2d 256, 264 (2000). The defendant acknowledges the record does not contain the grand jury transcripts but appended them to his reply brief. The appendix is not part of the record and although the defendant references a motion to supplement

8

the record in his briefing, no such motion was filed. See *People v. Wright*, 2013 IL App (1st) 103232, ¶ 38 ("[t]he inclusion of evidence in an appendix is an improper supplementation of the record with information *dehors* the record"); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019). Therefore, we do not consider the grand jury transcripts. However, the record is sufficient to address the defendant's argument without presuming the court's ruling was proper.

¶ 28 "The grand jury determines whether probable cause exists that an individual has committed a crime" and "[g]enerally, a defendant may not attack an indictment returned by a legally constituted grand jury." *People v. Sampson*, 406 Ill. App. 3d 1054, 1057 (2011). "A defendant may, however, challenge an indictment that is procured through prosecutorial misconduct." *People v. DiVincenzo*, 183 Ill. 2d 239, 255 (1998). Dismissal of the indictment is only warranted if there is an "unequivocally clear" denial of due process and "actual and substantial" prejudice. *People v. Oliver*, 368 Ill. App. 3d 690, 695 (2006). "The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." *DiVincenzo*, 183 Ill. 2d at 257. "[A] due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted the defendant." *Oliver*, 368 Ill. App. 3d at 696-97.

¶ 29 In the circuit court, the defendant's motion to dismiss the indictment contained a purported quote of the grand jury transcripts indicating that the State elicited testimony that the defendant said he "faintly remember[ed]" K.M. giving him oral sex. He argued that this was false and misleading because the overhear recordings did not contain such a statement. The State acknowledged that it elicited the testimony but maintained that the overhear recordings contained that statement. Both parties and the court agreed that it was difficult to hear what was said.

9

¶ 30        In light of the State's representation to the circuit court, the absence of any evidence to the contrary, and the agreement of all that the recording was difficult to hear, we find that the State did not deliberately or intentionally provide inaccurate information or mislead the grand jury. Thus, it is not "unequivocally clear" that the defendant was denied due process. See *id.* at 695. Regardless, the purportedly improper testimony involved allegations of oral sex but none of the charges levied against the defendant in the superseding indictment contain allegations of oral sex. Therefore, we cannot say the grand jury would not have indicted the defendant absent the testimony and thus, no actual or substantial prejudice resulted from the alleged misconduct.

¶ 31        As to the defendant's arguments regarding questions about the defendant coaching, the defendant's motion in the circuit court only made a conclusory statement that the State misled and deceived the grand jury when answering questions regarding coaching. Neither the motion, nor counsel during argument on the motion, expounded on the substance of such answers or how they were allegedly false or misleading. In his opening brief, the defendant provides slightly more detail, noting that the grand jury questioned whether the defendant was currently coaching softball for 12 and 13 year old girls, which was the same general age of K.M. at the time of the alleged abuse, but fails to point to anything false or misleading about this purported question or the answer. Assuming the grand jury asked that question, there is nothing about that question that would lead to a conclusion that the defendant was denied due process or that the question or answer led to the indictment of the defendant. In his reply brief, the defendant attempts to provide significantly more detail regarding this allegation by quoting various portions of the transcript, but the defendant did not make these arguments in the circuit court, and they are forfeited. See *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009) ("It is axiomatic that

10

arguments may not be raised for the first time on appeal."). Based on the foregoing, the circuit court properly denied the defendant's motion to dismiss the indictment.

¶ 32                                B. Overhear Recordings

¶ 33       The defendant argues that the overhear authorization was obtained without a showing of reasonable cause, and admission of the overhear recordings into evidence caused significant prejudice. The defendant forfeited review of this issue as he did not raise the specific arguments in the circuit court that he advances on appeal. See *id.* ("Because it is improper to raise an argument for the first time on appeal, we deem it waived."); see also *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal."). Instead, defendant only made a general objection to the admittance of the overhear recordings during trial and never referred to the purported lack of reasonable cause for the overhear in his trial objection or posttrial motion.

¶ 34                                C. Other Bad Acts Evidence

¶ 35       The defendant argues that the court abused its discretion in admitting other bad acts evidence—allegations of sexual contact between the defendant and K.M. in Florida during the same time period as the conduct underlying the charges in the instant matter. Relatedly, he argues that the court erred by concluding the other bad acts evidence was admissible without conducting an evidentiary hearing.

¶ 36       Generally, evidence of a defendant's prior crimes is inadmissible because it is so persuasive of the defendant's propensity to commit crimes that it becomes unfairly prejudicial. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). However, in matters involving charges of aggravated criminal sexual abuse, evidence that the defendant committed another similar offense "may be admissible (if that evidence is otherwise admissible under the rules of evidence) and

11

may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3 (b) (West 2018). Section 115-7.3 of the Code allows "courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses." *Donoho*, 204 Ill. 2d at 176. Additionally, "it is well established that in sexual offense cases evidence of a defendant's prior sexual activity with the same child is admissible to show the defendant's intent, design or course of conduct and to corroborate the victim's testimony concerning the charged offense." *People v. Anderson*, 225 Ill. App. 3d 636, 647 (1992). "In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2018).

> "The trial court's decision to admit or deny other-crimes evidence to show the defendant's propensity to commit sex offenses will not be disturbed absent an abuse of discretion. [Citation.] A trial court abuses is discretion where its ruling is arbitrary, fanciful or where no reasonable person would take the view adopted by the court." *People v. Taylor*, 383 Ill. App. 3d 591, 594 (2008).

¶ 37        Here, the situations involving the Florida acts and the offenses the defendant was charged with are similar as they involve sexual acts with the same victim, K.M. Additionally, the Florida acts occurred during the same time frame as the instant offenses. The evidence was probative to show the defendant's propensity to commit the offenses, to show his course of conduct with K.M., and to corroborate K.M.'s testimony regarding the instant offenses. Moreover, the defendant was tried in a bench trial and

> "[t]he rule generally barring other-crimes evidence is based on the belief that the introduction of the evidence may over-persuade a jury to convict a defendant only

because the jury believes the defendant is a bad person deserving punishment. [Citation.] In a bench trial, this fear is assuaged; it is presumed that the trial court considered the other-crimes evidence only for the limited purpose for which it was introduced." *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24.

The defendant has not rebutted this presumption. Therefore, the prejudicial effect of the testimony did not substantially outweigh its probative value. The court did not abuse its discretion in admitting the evidence. See *Donoho* 204 Ill. 2d at 183.

¶ 38    Additionally, although the defendant argues that the court erred in refusing to hold an evidentiary hearing as he requested, he acknowledges that there is no law granting him the right to an evidentiary hearing. We see no error in the court's refusal to hold one.

¶ 39                               D. Judgment Notwithstanding the Verdict

¶ 40    The defendant argues that the court erred in denying his motion for a judgment notwithstanding the verdict. However, the defendant's argument is framed as a challenge to the sufficiency of the evidence and a contention that the court's erroneous evidentiary rulings deprived him of a fair trial such that his motion for new trial should have been granted. Accordingly, we address each of these arguments in turn.

¶ 41    When the sufficiency of the evidence is challenged, this court determines whether the evidence, when viewed in the light most favorable to the State, would permit any rational trier of fact to find that the State proved the elements of the offense beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "[I]t is the function of the trier of fact to determine the credibility of the witnesses, the weight to

13

be given to their testimony and the inferences to be drawn from the evidence." *People v. Akis*, 63 Ill. 2d 296, 298 (1976). The credible testimony of a single witness is sufficient to convict. *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 42    To find the defendant guilty of aggravated criminal sexual abuse, the State needed to prove beyond a reasonable doubt that the defendant committed "an act of sexual penetration or sexual conduct with [K.M.] who was at least 13 years of age but under 17 years of age and the [defendant] was at least 5 years older than [K.M.]" 720 ILCS 5/12-16(d) (West 1996). The defendant solely challenges the proof of the alleged sexual conduct. As alleged in the indictment, the State needed to prove that "the defendant placed his mouth upon the breasts of K.M." on two different occasions, and the defendant "placed his penis upon the body of K.M." The State presented evidence of these acts through K.M.'s testimony. Although the defendant asserts that K.M. was not credible because the alleged conduct occurred long before it was reported and there were some inconsistencies in her statements, it is for the trier of fact to determine the credibility of the witnesses. See *Akis*, 63 Ill. 2d at 298. Further, the testimony from K.M. alone was sufficient to convict. See *Gray*, 2017 IL 120958, ¶ 36. Additionally, on the overhear recordings, the defendant admitted to an inappropriate relationship with K.M. and that he kissed her. Further, he failed to deny any of her allegations and apologized. K.M.'s testimony was also partially corroborated by T.R.'s testimony that she found an email from the defendant to K.M. stating that he missed holding, touching, and kissing K.M. Viewing this evidence in the light most favorable to the State, we conclude that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

¶ 43    Turning to the defendant's alternative arguments regarding the allegedly improper evidence, we have already addressed the defendant's alleged errors regarding the other bad acts

14

evidence and overhear recordings and found no error as to the other bad acts evidence and that the overhear recordings argument was forfeited. See *supra* ¶¶ 36-42. Defendant further argues that his objections to evidence were routinely overruled, the court improperly admitted the VHS tape, and "[b]ias and vendetta." However, the defendant failed to provide a cohesive argument or support for these contentions, and we therefore decline to address the merits of these issues. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("A reviewing court is entitled to have issues clearly defined with *** cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research."); *People v. Ward*, 215 Ill. 2d 317, 332 (2005). ("A point raised in a brief but not supported by citation to relevant authority *** is *** forfeited."). Specifically, the defendant failed to set forth any specific objections or why any such objections should have been sustained and instead he summarily directs the court to various pages of the transcripts. As to the VHS tape, while he provides some argument as to the chain of custody and missing portions of the tape, he provides no legal analysis or citations to support this argument. He likewise fails to provide any legal support for his "[b]ias and vendetta" argument.

¶ 44                                    E. Constitutional Challenge to SORA

¶ 45        The defendant argues that SORA is unconstitutional as applied to him. He further argues that if this court disagrees, he should be subject to the SORA requirements in effect at the time of the offenses, which would only require him to register as a sex offender for 10 years rather than for life.

¶ 46        In *People v. Tetter*, 2019 IL App (3d) 150243-B, ¶ 22, the circuit court ordered the defendant to register as a sex offender. On appeal, this court, determined that we lacked jurisdiction to consider the defendant's as-applied SORA challenge because the supreme court

15

held in *Bingham* "that even if the SORA statute's requirements constitute punishment, it would not be punishment imposed by the trial court." *Id.* ¶ 38 (citing *People v. Bingham*, 2018 IL 122008, ¶ 18). Consistent with *Tetter*, we conclude that we lack jurisdiction to consider the defendant's as-applied constitutional challenges to SORA. See also *People v. Kochevar*, 2020 IL App (3d) 140660-B, ¶¶ 16, 33-35 (concluding this court lacked jurisdiction to consider an as-applied challenge to SORA even though the circuit court ordered the defendant to register as a sex offender); *People v. Vesey*, 2020 IL App (3d) 180075, ¶ 10 (rejecting an argument that the defendant's case was distinguishable from *Bingham* because language in the probation order required him to register and determining that the probation order language did not create an order by which he could challenge the constitutionality of SORA because "the registration requirement applied to defendant with or without the language in the probation order"). We likewise lack jurisdiction to consider the defendant's argument as to which version of SORA should apply to him.

¶ 47                                  III. CONCLUSION

¶ 48          We dismiss the portion of the defendant's appeal challenging the constitutionality of SORA. In all other respects, the judgment of the circuit court of Will County is affirmed.

¶ 49          Appeal dismissed in part and affirmed in part.